### James Boldry *vs.* Thomas Parris & others.

Two of three witnesses to a will, when signing it as such, being in a different room from the testatrix, and not in her presence, view, or hearing, although in a room connected by an intermediate room with that in which she was lying; this is not a signing by such witnesses in the presence of the testatrix.

This was an appeal from a decree of the judge of probate for the county of Plymouth, approving the will of Anna Palmer, late of East Bridgewater, deceased. The questions presented for the consideration of the court, on the appeal, were, whether the will was duly executed by the testatrix, and duly attested and subscribed by the witnesses. The case was submitted on the following agreed statement of the testimony of the subscribing witnesses : —

Samuel A. Orr, one of the witnesses, and the attending physician, testified : " I wrote the will at the request of the testatrix, ten days before her death, and on the day of its date, in the morning, I carried it to the house of Ellis C. Holmes, where she lay sick in the bedroom, and read the will in her presence and hearing. I told her it was necessary to have witnesses to the will, and she would have to sign it. She said she could not write her name, and wanted to know if her mark would answer. I told her it would. I wrote her name to the will, and called . Mr. Holmes to come and

witness the will, and cannot tell whether Mrs. Holmes was there or not. I then read the will in the presence of Mr. Holmes, and am not positive about Mrs. Holmes. Miss Palmer then made her mark on the will, and acknowledged it to be her last will and testament. I wrote my name as a witness, when I put her name to the will. I then took the will into another room called the east room, where it was signed by Mr. and Mrs. Holmes, the other two witnesses to the will. I then went back to the room where the testatrix was lying, and showed her their signatures. She asked me if that would stand law. I told her I thought it would. I think Mr. Holmes was there when I showed her their signatures, but cannot say whether Mrs. Holmes was there or not."

Susan Holmes testified: " I signed the will in the east room. I don't recollect of Orr's signing it in the east room, or of seeing him do it at all. After it was signed by myself and husband, Orr took it and went back into the bedroom. I did not go back immediately, but got there in season to see her testify and sign the will. Orr was in the bedroom. I saw Orr hold up the will, and ask her if that was her last will and testament. She said yes. I saw her sign it. I think I was in the bedroom when my husband came. I cannot recollect whether my husband and myself were in the bedroom when Orr went out with the will into the front room. I followed him into the east room. After I returned from the front room, I saw Orr holding up the will for her to test to; she said yes, she tested to it. My husband, I think, went into the bedroom with Orr after we had signed it."

Upon cross examination the witness testified: " I did not see Orr sign the will; I saw Miss Palmer make her mark. She lay in bed, with her head raised. My husband was there. I signed the will before I saw her make her mark. I think she made her mark after we signed it in the east room. When Orr returned to the bedroom, I soon followed, and saw him holding the paper. He asked her if it was her will. She said yes. I did not hear the will read. I don't recollect of any person saying any thing of the will's standing law

I don't recollect any thing being said about my signature to the paper, nor about my husband's signature."

Ellis C. Holmes testified : " The doctor came in the afternoon, and I saw him writing ; after he wrote the will and signed it, he brought it for me and my wife to sign in the east room, and we signed it there. He took it and said we must go and see if she will acknowledge it. I followed him to the bedroom. He read it, and asked her if it was right. She said yes, she believed it was. He asked her if she acknowledged it to be her last will and testament. She said yes sir. He said, well then, you will sign your name. She said she used to write, but she felt so sick that she did not know as she could write it very well. He said if she could not write, making a cross was just as well. She then made her cross. I left and went to work. When I signed it, her name was not to the will. The cross was the last thing done. I left soon after. The doctor's name was on the will when I signed it. My wife came to the bedroom soon after I did, in season to see her make her mark. I am not sure my wife was in the bedroom, when she said it was her last will and testament."

Upon cross examination the witness said : " At the call of one of my children, I think I went to the bedroom. I heard him read the will only once ; did not hear the will read before the doctor came into the east room. Anna Palmer's name was on the will when I signed it. The doctor roused her up, she being a little sleepy when he came back from the east room, and I followed him. He read the will ; my wife came in before the doctor got through reading the will. He read the will before she made her mark. I don't recollect of his reading the names of the witnesses, or any farther than " 1847." Don't recollect of any thing being said about will's standing law. I was not asked by any person whether that was my signature. I don't recollect of saying that it was my signature, or any thing about it. I think the doctor showed her the will and the names of the witnesses. I am as positive of that as I am of any thing. Miss Palmer asked, just before

or just after he read the will, if I had signed. I told her 1 had. I don't recollect that she asked if any of the witnesses had signed. I read the will in the east room before I signed it, as I always read papers before I sign them."

It was admitted and agreed, that the testatrix did not and could not see Mr. and Mrs. Holmes sign the will, where they signed it as witnesses, in the east room, it not being in her presence, view, or hearing. The east room was connected with the bedroom, in which the testatrix lay, only by the kitchen between.

If in the opinion of the court, the will was not properly executed, attested and subscribed, the decree of the probate court is to be reversed, and the case remitted for further proceedings ; otherwise a new trial is to be ordered, if the appellant so elects, upon other issues in the case.

*T. G. Coffin* and *W. Young,* for the appellees.

*T. D. Eliot* and *W. Latham,* for the appellant.

FLETCHER, J. This is an appeal from a decree of the judge of probate approving the will of Anna Palmer, late of East Bridgewater, deceased. The case is submitted upon a report of the testimony of the subscribing witnesses to the will. This testimony is so remarkably confused and contradictory, that it is very difficult to ascertain satisfactorily such facts as are essential to a decision of the case.

The general question, which arises on the testimony, is, whether the will was properly and legally executed, attested and subscribed. The first inquiry is, whether, in point of fact, the will was executed by the testatrix before it was attested and subscribed by the witnesses.

The physician who wrote the will says he wrote the name of the testatrix to the will, but does not say it was by her direction, and that he wrote his own name as a witness at the same time. This witness, after having stated that he wrote the name of the testatrix to the will, proceeds to say, that he called Mr. Holmes to come and witness the will, but cannot tell whether Mrs. Holmes was there or not. He then says that he read the will in the presence of Mr. Holmes, but

cannot be positive about Mrs. Holmes; that the testatrix then made her mark on the will, and acknowledged it to be her last will and testament; that he then took the will into another room, where it was signed by Mr. and Mrs. Holmes, the other two witnesses; that he then went back to the room where the testatrix was lying, and showed her the signatures of the witnesses, and she asked if that would stand law. He thinks Mr. Holmes was present when he showed the signatures of the witnesses, but cannot say whether Mrs. Holmes was there or not. According to the testimony of this witness, the will was executed by the testatrix and subscribed by him as a witness, before it was taken into the other room and subscribed by the other witnesses.

But Mrs. Holmes testifies distinctly, that it was after the will was subscribed by herself and husband, that the will was taken back to the bedside of the testatrix, there signed by her with her mark, and declared to be her last will and testament. According to this witness, it would seem clear, that the will was not executed by the testatrix, until after the witness and her husband subscribed their names as witnesses in another room out of the presence of the testatrix.

Mr. Holmes, the husband, the other subscribing witness, in his direct examination, testifies expressly that the will was subscribed by himself and wife as witnesses, before it was signed by the testatrix and declared by her to be her last will and testament, and that the name of the testatrix was not on the will when he signed it. In his cross examination, this witness distinctly declares that the name of the testatrix was on the will when he signed it.

The testimony, therefore, as to the fact whether the testatrix executed the will before it was attested by two of the witnesses, stands thus. One witness distinctly testifies, that she executed it before it was signed by two of the witnesses. One other witness distinctly testifies, that she executed it after it was signed by these witnesses. And the other witness distinctly testifies both ways; that her name was not on the will when he signed it; and that it was on the will when he signed it.

37 *

But it is not necessary to ascertain what was the fact in this particular, nor to determine what would be the legal effect of the fact, however it might be found, in order to come to a decision of the case. It is admitted and agreed, that the testatrix did not and could not see Mr. and Mrs. Holmes, two of the witnesses, sign the will, when they signed it as witnesses in the east room, it not being in her presence, view, or hearing. Now the statute expressly requires, that the will should be attested and subscribed in the presence of the testator by three or more competent witnesses. But it was maintained, that what took place after the witnesses put their names to the will was a sufficient subscribing in the presence of the testatrix. Whether or not, if the witnesses had acknowledged their signatures in the presence of the testatrix, that would have been a sufficient subscribing in her presence, it is not necessary to decide, as no such acknowledgment is shown by the facts. It would seem, that the two witnesses who subscribed in a room separate and apart from the testatrix, after they had put their names to the will out of her presence, went into her room.

Mr. Holmes says, " I was not asked by any person, whether that was my signature. I do not recollect of saying that it was my signature, or any thing about it." But he afterwards says, " Miss Palmer asked, just before or just after he read the will, if I had signed. I told her I had." The testimony of this witness is so confused and contradictory, that the fact which is the subject of inquiry is left in great doubt and uncertainty, so far as respects him. But as to Mrs. Holmes, it does not appear, that the slightest reference was made to her signature, in any way, when she was in the presence of the testatrix. Nothing was said or done, so far as is shown, in regard to her signature, when she was in the presence of the testatrix. There is therefore one at least of the three subscribing witnesses, who cannot be said, in any sense, to have attested and subscribed the will in the presence of the testatrix.

Upon the whole, the court is entirely satisfied that the will

was not attested and subscribed in the presence of the testatrix, by three or more competent witnesses, as is expressly required by the statute.

The decree of the judge of probate is reversed, and the case remitted to the probate court for further proceedings.